CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
AUG 08 2011
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| TIMOTHY C. HALL, | ) |
| Plaintiff, | ) Civil Action No. 5:11CV00003 |
| v. | ) **MEMORANDUM OPINION** |
| MICHAEL J. ASTRUE, | ) By: Hon. Glen E. Conrad |
| Commissioner of Social Security, | ) Chief United States District Judge |
| Defendant. | ) |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. § 1381 et seq. Jurisdiction of this court is pursuant to 42 U.S.C. § 1383(c)(3), which incorporates § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). As reflected by the memoranda and argument submitted by the parties, the issues before this court are whether the Commissioner's final decision is supported by substantial evidence, and if it is not, whether plaintiff has met the burden of proof as prescribed by and pursuant to the Act. Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Timothy C. Hall, was born on June 15, 1989. He eventually completed his high school education.[1] Based on the testimony of the vocational expert, the Administrative Law Judge found that Mr. Hall has no past relevant work. (Tr. 21). On November 30, 2008, Mr. Hall filed an application for supplemental security income benefits. He alleged that he became

---

[1] Plaintiff participated in special education classes.

disabled for all forms of substantial gainful employment on October 1, 2003, due to depression, explosive and conduct disorder, oppositional defiant disorder, bipolar disorder, severe mood swings, headaches, and attention deficit hyperactivity disorder (ADHD). Mr. Hall now maintains that he has remained disabled to the present time.

Plaintiff's claim for supplemental security income benefits was denied upon initial consideration and reconsideration. He then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated September 24, 2010, the Law Judge also determined that Mr. Hall is not disabled. The Law Judge found that plaintiff suffers from a number of severe mental impairments, including an affective disorder, an explosive and conduct disorder, attention deficit disorder/attention deficit hyperactivity disorder (ADD/ADHD), low to below average intellectual functioning, and an anxiety disorder. The Law Judge assessed Mr. Hall's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant retains the ability to perform simple, routine tasks with short, simple instructions and to make simple, work-related decisions. The claimant can perform tasks allowing for significant limitations in his ability to understand and remember detailed instructions and moderate limitations in his ability to carry out detailed instructions. He can perform activities that allow for moderate limitations in his ability to complete tasks within a schedule, maintain regular attendance and be punctual within customary tolerances. Mr. Hall has the ability to perform tasks that allow for moderate limitations in his ability to sustain an ordinary routine without special supervision. The claimant can perform work activities that allow for moderate limitations in his ability to interact appropriately with the public, in his ability to accept instructions and respond appropriately to criticism from supervisors and in his ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes.

(Tr. 15). Given such a residual functional capacity, and after considering plaintiff's age, education, and lack of any relevant work experience, as well as testimony of a vocational expert, the Law Judge determined that Mr. Hall retains sufficient functional capacity to perform several specific work roles existing in significant number in the national economy, including the roles of custodian, hand packager, and mechanical assembler. Accordingly, the Law Judge concluded that Mr. Hall is not disabled, and that he is not entitled to supplemental security income benefits. See 20 C.F.R. § 416.920(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mr. Hall has now appealed to this court.

While the plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether the plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. § 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is unable to conclude that the Commissioner's final decision is supported by substantial evidence. The record establishes that Mr. Hall suffers from a combination of severe mental impairments. Both his treating psychiatrist and a consultative examining psychologist have produced mental status findings and opinions which indicate that plaintiff is unable to work because of his nonexertional limitations. While

the Administrative Law Judge discounted their findings based on reports from a nonexamining state agency psychologist, the court concludes that the Law Judge's opinion is inconsistent with the governing administrative regulations, and that the Commissioner's treatment of plaintiff's mental health condition is not supported by substantial evidence. Moreover, based on the reports from the treating psychiatrist and the consultative examining psychologist, the court concludes that Mr. Hall has met the burden of proof in establishing total disability for all forms of substantial gainful employment.

The record reveals that Dr. Kenneth A. Widra, a psychiatrist at the McNulty Center for Children and Families, began treatment of Mr. Hall on June 27, 2007. (Tr. 295-297). By way of history, Dr. Widra noted that plaintiff had been living with his adoptive father for eight to nine years and that plaintiff's biological family had been neglectful and abusive. Dr. Widra indicated that plaintiff had been previously treated by another psychiatrist for two and a half years, who had diagnosed him with ADHD, bipolar II disorder, rapid cycling, conduct disorder, and learning disabilities in language and reading. After that psychiatrist retired, Mr. Hall was treated by a nurse practitioner, who altered his medications. Dr. Widra related that plaintiff was no longer suicidal, homicidal, or engaging in sexual acting out, but that he continued to experience periods of depression, anxiety, rigidity, and perseveration, and that his frustration tolerance remained "extremely poor." (Tr. at 295). Dr. Widra diagnosed ADHD; intermittent explosive disorder; reactive attachment disorder; post traumatic stress disorder; rule out bipolar disorder, type II; learning disability, by history; and borderline intellectual function.

Mr. Hall continued to see Dr. Widra on a regular basis through March of 2010. On November 7, 2007, plaintiff returned with an occasional increase in irritability and angry

outbursts. (Tr. 306). After Dr. Widra adjusted his medications, Mr. Hall experienced increased aggression and frustration. Dr. Widra's examination notes from January 29, 2008 indicate that plaintiff "punches walls and nearly jumped out of a car when upset and irritable." (Tr. 304). The following month, plaintiff presented with some reduction in aggressive behavior. However, he was "still quite irritable and moody, and it [took] some effort to redirect him." (Tr. 303). Although Mr. Hall exhibited improvement during several subsequent visits, Dr. Widra noted on September 17, 2008 that plaintiff appeared mildly dysphoric and that he was experiencing heightened irritability and poor frustration tolerance. (Tr. 299).

On January 7, 2009, Dr. Widra completed a mental status evaluation for the state disability agency. (Tr. 290-294). Dr. Widra reported that plaintiff has aggressive outbursts, that he requires sleep assistance, and that he requires significant prompting and supervision with daily activities. Dr. Widra described plaintiff's attitude as "irritable" and his affect as "flat." (Tr. 292). Dr. Widra also noted that plaintiff's attention span, concentration, ability to complete tasks, and judgment are "poor," that he "deteriorates quickly under stress," that his fund of information is below average, and that he is unable to manage his own funds. (Tr. 293-294).

Dr. Widra's examination notes from May 5, 2009 indicate that plaintiff had been performing fairly well at school, but that he had experienced a major expressive episode with his brother. Dr. Widra described the incident as follows:

> [A]fter exchanging threats to the point of facing off, [plaintiff] made threats to burn down the house, and took kitchen knives at one point when the police were called and ran out of the house into the woods. He eventually calmed down, came back of his own accord after the police left, and discarded the knives, although when recounting the events, it is evident that while the police were there, he was entirely distracted from the initial anger, and viewed it as a game of evasion.

5

(Tr. at 384). Although the plaintiff denied experiencing any homicidal or suicidal ideation following the incident, Dr. Widra chose to change the plaintiff's medications "for added coverage." (Tr. 384).

On November 17, 2009, Dr. Widra reported that Mr. Hall had been behaving fairly well, but that "[h]e continue[d] to have difficulty containing his impulsive comments and will spontaneously blurt them out even when cautioned in that regard." (Tr. at 428). Dr. Widra emphasized that he remained of the opinion that Mr. Hall "should be classified as disabled, given his level of cognitive function, affective lability, and history of impulsivity, aggression and extremely poor interactions with authority figures and peers over time." (Tr. 428).

Dr. David B. Reid, a licensed clinical psychologist, examined plaintiff on three occasions in January and February of 2009. (Tr. 369-372). In his psychological evaluation, Dr. Reid listed mental status findings as follows:

> Psychological evaluation of this 19-year-old Caucasian male revealed overall smooth intellectual functioning within the low to below average range. Other cognitive skills were generally commensurate with these findings, however his attentional capacity is diminished as evidenced by his difficulty on tasks that assess divided and sustained attention for both verbal and non-verbal material. His deductive reasoning abilities were assessed within the low-average range, however there were indications that he is very susceptible to interference. Consequently, when [Mr. Hall] is taught a new task, he would do best under circumstances that permitted practice and repetition with limited interference. From an emotional perspective, he is easily overwhelmed and distressed do [sic] to limited coping skills and a tendency to react in emotional ways that are intense and impulsive. He is prone to engaging in behaviors that are poorly planned and there are indications that he does not likely learn from natural consequences of these behaviors. Socially, he has difficulty forming and maintaining meaningful relations with others and may find socialization uncomfortable and challenging. He does not have a very good understanding of people in general and this is likely related to his history of abuse and neglect during childhood.

(Tr. at 371). Dr. Reid diagnosed plaintiff with bipolar disorder II, posttraumatic stress disorder, rule out ADHD, and personality disorder NOS. He assessed plaintiff's GAF at 50.[2] In light of such findings, Dr. Reid opined as follows:

> With the aforementioned clinical impressions in mind, it is not likely that [Mr. Hall] would be able to maintain any level of competitive employment. He is likely to encounter difficulties with learning even simple and rote tasks unless learning opportunities are near ideal and lack any interference or distractions which challenge his attentional capacity. Even if he is able to learn simple and mundane tasks, he is likely to become readily frustrated and at risk for engaging in poorly planned and impulsive behaviors. He has very poor coping skills and his ability to tolerate conflict or any threat (implied or real) to his personal integrity is significantly challenged. He will challenge authority figures and is not likely to willingly take directions from others unless he is in full agreement with the directives. Unfortunately, his social skills are very poor and he lacks a general understanding of people to such an extent that it challenges his ability to initiate and maintain healthy and meaningful relations with others. In essence, [Mr. Hall] presents with a primitive personality structure that will challenge his ability to function as an independent adult at any time in the foreseeable future. With this in mind, his father is highly encouraged to pursue Social Security Disability on his behalf and it is most unlikely that he will be able to support himself once he turns of legal age.

(Tr. at 371).

As previously noted, the Administrative Law Judge discounted the reports and assessments from Dr. Widra and Dr. Reid, and instead credited the opinion of a nonexamining state agency psychologist that the plaintiff is capable of working and that his mental impairments result in only moderate limitations. The Law Judge found that the nonexamining psychologist's opinions were entitled to "significant weight," since they were "consistent with the reported

---

[2] The global assessment of functioning, or GAF, is used to report the clinician's judgment of the subject's overall level of functioning. A score between 41 and 50 is indicative of "[s]erious symptoms . . . OR any serious impairment in social, occupational, or school functioning . . . ." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. test. rev. 2000).

7

improvement in the claimant's behavior with the use of medications, with his ability to act as a caregiver for his brother and with his ability to behave adequately with a mental health support specialist." (Tr. 20).

Having reviewed the record, the court is unable to conclude that the Law Judge's treatment of the reports and opinions from Dr. Widra and Dr. Reid, or the Law Judge's reliance on the opinions of a nonexamining psychologist, comport with the requirements of the administrative regulations dealing with the evaluation of opinion evidence. Under 20 C.F.R. § 416.927(d)(1), it is explicitly provided that, generally, more weight will be given to the opinion of a medical source who has actually examined the claimant. Moreover, 20 C.F.R. § 416.927(d)(2) directs that, generally, more weight is given to opinions from treating sources, since such professionals are more likely able to provide a detailed, longitudinal picture of the claimant's medical impairments. Finally, under 20 C.F.R. § 416.927(d)(5), it is noted that more weight is accorded to the opinion of a specialist about medical issues related to the area of specialty. In the instant case, it is clear that Dr. Widra and Dr. Reid actually saw Mr. Hall on several occasions, whereas the state agency psychologist has never seen or examined the plaintiff. Moreover, there can be no question that Dr. Widra qualifies as a treating source. Perhaps most importantly, in Mr. Hall's case, there is a substantial contrast between the qualifications of Dr. Widra and those of the state agency psychologist. Dr. Widra is a physician with a medical specialty in psychiatry. The state agency psychologist is not a physician. She neither examined nor treated Mr. Hall on even a single occasion. In such circumstances, the court does not believe that the Law Judge's reliance on the report of the nonexamining psychologist can be deemed to be supported by substantial evidence.

Moreover, the court finds no evidence to support the notion that Dr. Widra's psychiatric opinions are inconsistent with his clinical notes. When Dr. Widra began treating Mr. Hall in June of 2007, he prescribed Effexor, Cymbalta, Neurontin, Geodon, Buspar, Risperdal, Strattera, and Klonopin. Mr. Hall remained on most of these medications, in addition to others, throughout his treatment. While the Commissioner correctly observes that, on several occasions, plaintiff is said to have responded positively to his medications, the court does not believe that such notations in the record provide a reasonable basis to support the rejection of Dr. Widra's opinion. Psychiatric evaluations cannot be based on x-rays or laboratory studies. Instead, a mental health clinician must be able to observe the claimant, consider his complaints, and assess his mental status. Perhaps it is for this reason that the administrative regulations emphasize the importance of the examining relationship and the treatment relationship. In this case, both of the mental health specialists who have actually examined Mr. Hall, including his treating psychiatrist, have deemed his psychiatric problems to be of such severity as to preclude him from performing substantial gainful activity.

The court also concludes that the Law Judge's reliance on the plaintiff's role as a "caregiver" for his mentally disabled younger brother is not supported by substantial evidence. (Tr. 20). While Mr. Hall testified during the administrative hearing that he assists with his brother's bath, fixes his brother sandwiches, and helps his brother get dressed, Mr. Hall also emphasized that his father is "always around" and that he is under constant supervision. (Tr. 34). Moreover, it is clear from the record that the plaintiff has extreme difficulty carrying out his own activities of daily living without significant direction and assistance. His father testified that he has to make the plaintiff get out of bed each morning, that the plaintiff has poor hygiene, and that

the plaintiff often refuses to take showers. Likewise, reports from the plaintiff's mental health counselors with Crossroads Counseling Center, who spent time with the plaintiff on a regular basis, indicate that he struggles with cleanliness issues, that he repeatedly permits his bedroom to deteriorate to a state of squalor, and that he needs prompting to perform household chores. Indeed, the most recent quarterly review from Crossroads, dated April 15, 2010, indicates that "[s]ome of [Mr. Hall's] most significant areas of need continue to be his lack of ability to manage himself in completing tasks of independent daily living," (Tr. 450), and that he has "consistently refused . . . attempts to help [him] organize his laundry, do laundry, clean his room, organize his room, paint his room, make his bed properly, dispose of trash properly, prepare meals beyond using rudimentary items at home, make proper eating choices independently, or manage a budget" (Tr. 448). For these reasons, the court concludes that the Law Judge's assessment of the plaintiff's daily activities is not supported by substantial evidence, and that the reports from Crossroads Counseling Center are consistent with the opinions of Dr. Widra and Dr. Reid.

In passing, the court cannot help but note that if the Commissioner had reason to doubt the accuracy or consistency of the psychiatric assessments offered by Dr. Widra or the psychological evaluation performed by Dr. Reid, the Commissioner had full authority to require Mr. Hall to appear for a consultative evaluation by an independent psychiatrist designated by the state disability agency. See 20 C.F.R. §§ 416.917-416.918. No such psychiatric (or psychological) examination was commissioned by the state disability agency and, as it now stands, the psychiatric evidence supporting plaintiff's claim of disability is essentially undisputed by any examining or treating source. Inasmuch as it is clear that Mr. Hall is unable to engage in

any regular and sustained employment activity under the findings of Dr. Widra and Dr. Reid, the court concludes that the plaintiff has met the burden of proof in establishing total disability for all forms of substantial gainful employment. The court further concludes that Mr. Hall has met the burden in establishing that he was disabled as of the date of his application for supplemental security income benefits.[3]

For the reasons stated, the court is constrained to conclude that the Commissioner's final decision is not supported by substantial evidence. Defendant's motion for summary judgment must, therefore, be denied. Upon the finding that plaintiff has met the burden of proof as prescribed by and pursuant to the Act in establishing disability for all forms of substantial gainful employment, judgment will be entered in favor of the plaintiff. The Commissioner's final decision denying supplemental security income benefits will be reversed to the extent that the denial was based on the finding that plaintiff is not disabled. However, since the Commissioner has apparently not considered whether plaintiff meets the financial eligibility requirements under the SSI Benefit Program, the court must remand the case to the Commissioner for an appropriate determination. An order and judgment in conformity will be entered this day.

The Clerk is directed to send certified copies of this opinion and the accompanying order to all counsel of record.

ENTER:  This 8th day of August, 2011.

*Glen Conrad*

Chief United States District Judge

---

[3] Pursuant to 20 C.F.R. § 416.335, a successful applicant for supplemental security income benefits may not receive such benefits for any period of time prior to the month following the month of application.